(61 Misc. Rep. 304.)

### GUTMAN et al. v. FOLSOM.

(Supreme Court, Appellate Term. December 9, 1908.)

1. LANDLORD AND TENANT (§ 166*)—CONDITION OF PREMISES—INJURY TO TENANT'S GOODS—NEGLIGENCE OF LESSOR.

　　Where the roof of a leased building was in good repair, the lessor was not liable for injuries to the tenant's goods from water leaking through the roof during an extraordinary rainfall, and while the roof was so thickly covered with snow and ice that the water was forced above the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

chimney flashings; the occurrence not being one that the lessor could reasonably have foreseen.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 647; Dec. Dig. § 166.*]

2. LANDLORD AND TENANT (§ 169*)—CONDITION OF PREMISES—INJURY TO TENANT'S GOODS—ACTION FOR DAMAGES—EVIDENCE.

In an action by a tenant against his lessor for injury to plaintiff's goods by the leaking of water from the roof, it was error to admit evidence of circumstances showing notice to defendant of defects in the roof during previous leases.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 665; Dec. Dig. § 169.*]

3. LANDLORD AND TENANT (§ 152*) — DEFECTS IN LEASED PREMISES—STIPULATIONS IN LEASE—WAIVER BY LESSOR'S AGENT.

A statement by a lessor's bookkeeper, made to the tenant when such tenant complained of defects in the roof of the leased building, that it was not necessary for the tenant to give written notice of such defects, was not binding on the lessor, and did not amount to a waiver of a stipulation in the lease that the lessor should not be liable for damage caused by leakage of the roof, unless such lessor failed to repair the same within a reasonable time after written notice to him of such leakage.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 538, 548; Dec. Dig. § 152.*]

4. LANDLORD AND TENANT (§ 152*)—REPAIRS—STIPULATIONS IN LEASE—NOTICE OF DEFECTS.

A stipulation in a lease that the lessor shall keep the premises in tenantable condition is not a covenant of insurance, and the tenant cannot recover for injury to his goods from leakage of the roof, where he fails to notify the lessor in writing of such leakage, as required by the terms of the lease.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 538, 548; Dec. Dig. § 152.*]

Appeal from City Court of New York, Trial Term.

Action by Moses Gutman and another against George W. Folsom, as committee of the estate of Margaret W. Folsom, a lunatic. From a judgment for plaintiffs, and an order denying a motion for a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and MacLEAN and SEABURY, JJ.

Baldwin & May (Arthur A. Michel, of counsel), for appellant.

House, Grossman & Vorhaus (Louis J. Vorhaus and Charles Goldzier, of counsel), for respondents.

MacLEAN, J. For the plain and concise statement requisite, it is alleged that this action is for damages occurring February 5, 1905, by the percolation through the roof of water upon the goods of the plaintiffs, occupying and having entered into the possession under a lease for one year from the 1st of February, 1905, of a loft on premises of which the defendant retained the care and possession of the roof which it was his duty as landlord to keep in repair, but which he negligently and in violation of his duty permitted to become out of repair, and which he upon being informed by the plaintiffs of the fact of its being out of repair promised to repair or keep in repair, to the damage and destruction of merchandise permitted by plaintiffs to remain upon the

premises in reliance upon the promise and agreement of the defendant. These allegations the plaintiffs hardly made out. They offered no evidence of anything visible to an alert observer to indicate need of precaution. The roof was not shown out of repair in any wise. It had been thoroughly overhauled in the autumn for the winter. It appeared that an extraordinary rainfall in the Sunday night of the 5th to 6th of February raised water upon the roof, covered with snow and ice, above the chimney flashings, which were in good order, something which had not happened in the history of 10 years or more of the building, an occurrence not likely to be foreseen or prevented with ordinary care. The information claimed to have been given of something being the matter with the roof was that on the preceding Friday, the 3d, one of the plaintiffs said to Mr. Eagan, the defendant's bookkeeper and collector, that the roof must be repaired, or he would get out, and that Eagan promised to repair. For making repairs there was seemingly hardly reasonable opportunity before the storm of Sunday. If the reasonableness of the time or delay under the circumstances was a question for the jury to determine, that determination was prejudiced by the admission of much evidence irrelevant to the issue proffered by the plaintiffs, such as conduct and occurrences under prior leases, negotiations with Eagan for the subsisting lease, results of talks with Eagan, his superintending installation of a fire sprinkler, consenting to cutting a hole between the fifth and sixth floors, conversations respecting leaks, all during the prior term, errors in admission of evidence sufficient for reversal.

Throughout the trial, however, the chief contention turned upon the effect of a covenant to repair, with a saving proviso running:

"The said lessor agrees to make * * * all repairs to the roof and exterior of said building, but it is understood that the lessor shall not be liable to the said lessee for any damage caused by leakage of the roof, vault lights or skylights unless the lessor neglects to repair the same within a reasonable time after a written notice of such leakage is delivered to the said lessor."

This condition, now often stipulated to forefend forced purchases by lessors of goods in lofts, goods claimed to be in rented lofts, it was sought to evade by testimony that the lessor's bookkeeper and collector, when told of leaks in November and December, 1904, and in January, during the term of a prior lease containing the same condition, said he would have it attended to, and that, upon being asked whether it would be necessary to give a written notice, he said it was not necessary so long as he was informed of it. There is no question that attention was given to such information, one of the plaintiffs testifying that every time he was called up, in fact, he sent somebody to look after it. The information notification of attention needed in the mutual interest of the lessor and the lessee may not be confused with the written notice made a condition precedent to casting the defendant in damages. Nor might the statement of the bookkeeper, if he made it which he denies, be distorted into a waiver of what he had no authority to waive. Nobody's collector and bookkeeper, nor even be he a general caretaker and factotum, can abrogate a covenant stipulated with his principal unless the latter has actually given him authority

so to do, or by his own acts have appeared to clothe him with that authority. An employé cannot endue himself with authority by his own assertion or by his acquiescence or by his conduct.

To fortify his contention that the written notice was waived, the plaintiffs' counsel cites a passage from the opinion in Underwood v. Farmers' Joint-Stock Ins. Co., 57 N. Y. 500:

"The doctrine of estoppel lies at the foundation of the law as to waiver. While one party has time and opportunity to comply with a condition precedent, if the other party does or says anything to put him off from his guard and to induce him to believe that the condition is waived or that a strict compliance with it will not be insisted on, he is afterwards estopped from claiming nonperformance of the condition."

He predicates application of this doctrine upon the statement that:

"It is conceded that there was a waiver of written notice by the course of dealings adopted between the plaintiffs and the defendant's agents acting under his express authority."

The very contrary appears. Moreover, the doctrine as to waiver so expressed was not concurred in by the brethren on the bench of the learned commissioner who wrote it (page 506 of 57 N. Y.). The decision itself was distinguished and limited later. Harris v. Burdett, 73 N. Y. 136. The doctrine was even restricted in the opinion itself by reference with approval to "the true rule" laid down in Ripley v. Ætna Fire Ins. Co., 30 N. Y. 136, 86 Am. Dec. 362. Applicable herein that doctrine might be only on assuming as facts, although absolutely contradicted, that one of the plaintiffs told Eagan on Friday they would move out unless the roof were repaired; that they remained. because Eagan promised, denied also, to repair and waived a notice in writing, denied again; that there was reasonable opportunity to repair a roof covered with ice and snow before rainfall of Sunday; that Eagan, in waiving the covenanted condition precedent to casting his employer in damages, acted within the authorized sphere of authority with which he had been clothed by the defendant; and that the waiver was supported by an agreement founded upon a valuable consideration. Waiver, so authorized and supported, there was none.

The counsel for the plaintiffs further relies, perhaps relies more, upon a statement in the opinion in Pratt v. Tailer, 114 App. Div. 574, 100 N. Y. Supp. 16, wherein the learned writer, discoursing of a similar provision in a lease, would seemingly have extended to landlords the stringent obligations of common carriers. But the negligence complained of in the case of Pratt v. Tailer, as admitted on demurrer, was a different and affirmative sort, in that the defendant permitted the roof to be occupied for a business calculated to and which did wear the roof and made holes in it, to the knowledge of the defendants and their agents, and which, as defendants knew, scattered débris upon the roof, and, stopping the drain pipe, caused the water to stand upon the roof and leak through the holes so made. The distinction between such a case as that and the present is expressly recognized in the same opinion by the remark:

"The provision exonerating the defendants from liability for any damage caused by leakage of the roof unless they shall neglect to make repairs within a reasonable time after receiving written notice of the defect must be deemed

to refer to defects arising from ordinary wear and tear of the elements, and not from those caused by the affirmative acts of the defendants themselves or by negligence on their part."

The covenanted obligation of the defendant to repair was not a covenant of insurance, and, if the plaintiffs would have the benefit of it, they had needs show compliance with its condition precedent. Failing that, their judgment may not stand.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.

GILDERSLEEVE, P. J., concurs. SEABURY, J., concurs in result.